# UNITED STATES DISTRICT COURT

### DISTRICT OF WYOMING

UNITED STATES OF AMERICA,

Plaintiff,

v.

**DEREK SKYLER BRUX,**

Defendant.

U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 OCT 10 PM 4 32

STEPHAN HARRIS, CLERK

**CRIMINAL COMPLAINT**

Criminal No. ___14MJ 69.S___

I, James Patrick, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

On or about October 10, 2014, in the District of Wyoming, the Defendant, **DEREK SKYLER BRUX,** did knowingly and without lawful authority or permission wreck railroad on-track equipment, to-wit: two Burlington Northern Santa Fe locomotives and at the time of said offense, Burlington Northern Santa Fe Railroad was engaged in interstate commerce.

In violation of 18 U.S.C. § 1992.

I further state that I am a Special Agent of the United States Federal Bureau of Investigation, and that this Complaint is based on the following facts:

*See Attached Affidavit of James Patrick*

Special Agent James Patrick

Sworn to before me and subscribed in my presence, this 10th day of October, 2014, at Casper, Wyoming.

**R. MICHAEL SHICKICH**
**United States Magistrate Judge**
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

## FEDERAL BUREAU OF INVESTIGATION SPECIAL AGENT JAMES PATRICK

1.    Your Affiant is employed as a Special Agent of the Federal Bureau of Investigation (FBI) and has been so employed for over eighteen years.

2.    Your Affiant investigates various violations of federal law, which include violation of 18 U.S. Code § 1992 –violence against railroad carriers and mass transportation systems on land, on water, or through the air.  This statute is commonly referred to as the "Train Wreck Statute."

3.    The information set forth in this affidavit is based on my investigation, and/or by other sworn law enforcement officers from various jurisdictions.

4.    The following does not contain all the facts known to your Affiant as it contains only those facts that are necessary to establish probable cause to the below detailed crime(s).

5.    On or about October 9, 2014, a train locomotive owned by Burlington Northern Santa Fe (BNSF) Railroad was stolen from the North Antelope Rochelle Mine (NARM), which is located in Campbell County, Wyoming.  The train was eventually driven and crashed into another train located at the Antelope Mine, which is located in Converse County, Wyoming.  The following information pertains to this incident.

6.    Specifically, on or about October 9, 2014, at approximately 9 a.m., an employee of Rail Link, later identified as **DEREK SKYLER BRUX** and hereafter referred to as **BRUX**, stole two attached BNSF locomotives from the NARM, which is located in Campbell County, Wyoming.  After leaving the NARM, **BRUX** headed in a southbound direction.

7.    The BSNF dispatcher immediately stopped all train traffic on the railroad lines in an attempt to avoid a head-on collision with another train. The Campbell County Sheriff's

1

Office (CCSO) was notified of this theft and responded to the crash site, which was at the Antelope Mine, located in Converse County, Wyoming.

8.   At the crash site, a responding CCSO deputy was informed that a male had departed the stolen and crashed locomotives and had fled on foot.  The deputy located this male (BRUX) walking along a creek bed near the crash site.  **BRUX** informed the deputy that he was "having a bad day" and that he was disgruntled with his employer.

9.   Subsequent investigation revealed that:

   a.   **BRUX** had traveled around 13 miles on the train tracks with the stolen locomotives, between the theft site and the crash site.

   b.   **BRUX** had run through and destroyed two closed switches that connect the mine rail from NARM to the main rail line  (Note: A switch is a section of track that allows one to change the travel of a train from one track to another.  The main line is a term used to indicate a common rail used by all trains – there are spurs off this main line which allow movement to and from the mines).  BNSF valued the cost to replace these switches at $50,000 to $60,000.

   c.   **BRUX** ran the locomotives at a high rate of speed on one of the busiest section of train tracks in the United States.  The route of travel went through a public grade crossing and past a BNSF maintenance crew working on the tracks.  Each action had the potential to cause catastrophic damage with grave results.

   d.   At the crash site, **BRUX** struck an idle train owned by the Union Pacific (UP) Raiload.  After striking the UP train, **BRUX** reversed direction of the stolen locomotives and struck the UP train again.  He attempted this a third time but an employee activated the exterior emergency fuel shut off valve.  This effectively stopped **BRUX** from moving the stolen train any further.

2

   e. There was no apparent damage to the struck UP train.  The damage to the stolen BNSF train is unknown at this time as it is being inspected for damage.

10. **BRUX** was interviewed by a CCSO investigator and a BNSF investigator at the CCSO facilities.  He relayed the following information:

   a. He confirmed he worked for Rail Link as a Utility Coal Operator and has been employed by them for almost three years.

   b. He said on this day (October 9, 2014), he was working at the North Rochelle or School Creek Mine, both sub-mines of the NARM.

   c. After receiving a call from his immediate supervisor which, in **BRUX's** words, "…really kinda pissed me off" and "sent me over the deep end," **BRUX** said he uncoupled the locomotives from the train cars.  He further said that his actions (taking the locomotives), was a "little hint you need to fix some things."  He admitted he was angry and frustrated with his employer and decided to take his frustration out by "going on the main line."

   d. After taking the locomotives, **BRUX** chuckled as he told the investigators that he went "around the loop" and "pretty much squashed the fuck outta their scales."  He then proceeded through "load out" and kept going.  **BRUX** told investigators that he blew the train horn so everyone was out of the way.

   e. After this, **BRUX** said he stopped and placed "a very, very, nasty angry call" to his supervisor.  He laughingly told investigators that he wanted to "play chicken with her" (the supervisor) and that he "invited her to come play."  Again laughing, **BRUX** admitted that his supervisor might perceive the call as probably "a little life threatening."

f.  After this call, **BRUX** said he got angrier and started the locomotives toward the main line.  Although he said he had second thoughts at this time, he decided to continue.

g.  **BRUX** admitted that he had no idea what was in front of him on the main line (obstacles, trains).

h.  When asked how fast he went, **BRUX** said he thought that he was going about fifty miles per hour (mph) "a good portion of the time." He said he did not know if he "quite got up to seventy" mph but said he "slightly" slowed down at the corners. Later during the interview, **BRUX** estimated that he traveled about fifteen minutes at sixty mph on the main line before encountering the switch into NARM.

i.  Between South Antelope and NARM, near the highway crossing, **BRUX** said there was a construction crew with a lot of workers on the site.  **BRUX** admitted he went through this area pretty quick and that "they were probably pretty fucking scared … "

j.  When he got to the Nacco Junction, **BRUX** said he was "pissed" when he found that the switch was lined to go into the mine.  He said he went into the mine area and then backed out.  He then heard conversations on the locomotive radio about switches and derails, and as he said he didn't want to derail a locomotive, he stopped.  He then went forward again into the mine.

k.  He said he then came upon another train, hoped there was no one on it or under it, and struck it at what he said was less than ten mph.  He admitted he did this twice.

l.  As he was getting ready to strike the train again, he noticed another Rail Link employee approaching the locomotive.  As he did not want to talk to anyone, he said he started to back up.  However, **BRUX** said this employee was able to hit the fuel cut-off switch, "and there ended my little escapade." He said he fled the locomotives towards the trees, was briefly followed by other employees, and then contacted by the CCSO deputy.

4

m. **BRUX** acknowledged that the locomotives he had taken belonged to BNSF, that he was not qualified nor allowed to be on the main line, and that he was only allowed to run the locomotives on mine property.

n. **BRUX** admitted that he didn't really have a plan with the locomotives but that he was just "pissed." He said he did not know where he was going and that he hoped to "piss off" his employer and make them pay for things. He admitted his anger got the best of him and that he could not control it.

11.  Based on the above, your Affiant requests that **DEREK SKYLER BRUX** be charged with 18 U.S.C. § 1992(1) –violence against railroad carriers and mass transportation systems on land, on water, or through the air.

Further your Affiant sayeth not.

James Patrick
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 10th day of October, 2014.

R. Michael Shickich
United States Magistrate Judge

5

## PENALTY SUMMARY

**DATE:**                     October 10, 2014

**DEFENDANT NAME:**    **DEREK SKYLER BRUX**


THE GOVERNMENT, PURSUANT TO RULE 18, F.R.Cr.P., WITH DUE REGARD FOR THE CONVENIENCE OF THE DEFENDANT, ANY VICTIM AND WITNESSES, AND THE PROMPT ADMINISTRATION OF JUSTICE, REQUESTS TRIAL BE HELD IN:

_____ Cheyenne     ✔ Casper     _____ Lander     _____ No Preference

**VICTIM:**        ✔ Yes    _____ No

**SEAL CASE:**     _____ Yes   ✔ No


**OFFENSE AND PENALTIES:**

**OFFENSE:**      18 U.S.C. § 1992
                 Violence Against Railroad Carriers

**PENALTIES:**    0-20 Years Imprisonment
                 $250,000 Fine
                 3 Years Supervised Release
                 $100 Special Assessment
                 Class "C" Felony


**AGENT:**  James Patrick/FBI     **AUSA:**  Stephanie I. Sprecher


**ESTIMATED TIME OF TRIAL:**        **INTERPRETER NEEDED:**

✔ five days or less              _____ Yes
_____ over five days              ✔ No
_____ other


**THE GOVERNMENT:**        _____ The court should not grant bond
✔ will                    because the defendant is not bondable
                          because there are detainers from other
_____ will not            jurisdictions

**SEEK DETENTION IN THIS CASE.**